**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| DREW E. BURBRIDGE, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| and | ) | |
| | ) | |
| JENNIFER L. BURBRIDGE, | ) | |
| | ) | |
| Plaintiffs, | ) | **Cause No.:    4:17-cv-02482-RLW** |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | *Counts: I, II, III, IV, and IX* |
| | ) | |
| and | ) | |
| | ) | |
| P.O. MARCUS  BIGGINS, | ) | Counts: *I, II, III, IV, V, VII, X and XI* |
| in his individual and official capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SGT. BRIAN ROSSOMANNO, | ) | Counts: *I, II, III, IV, V, VI, VII, X and XI* |
| a/k/a "The Riot King" | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOE #3, in his individual and | ) | Counts: *I, II, III, IV, V, VII, and X* |
| official capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOE #4, in his individual and | ) | Count: I, *II, III, IV, VI, VIII and X* |
| official capacities. | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Drew and Jennifer Burbridge, and for and in support of their

Second Amended Complaint against the City of St. Louis, Missouri, P.O. Marcus Biggins, Sgt.

Brian Rossomanno, John Doe #3, and John Doe #4, state as follows:

## INTRODUCTION

Plaintiffs bring this civil-rights action against the City of St. Louis, Missouri, P.O. Marcus Biggins, Sgt. Brian Rossomanno, John Doe #3, and John Doe #4 for violating their First Amendment rights of freedom of speech and freedom of press; retaliating against them for engaging in First Amendment-protected activity; for interfering with their right to record police officers in public places; for unreasonably seizing them, arresting them and applying excessive force; for violating procedural due process rights by "kettling" and spraying them with chemical agents designed to cause pain and confusion without constitutionally adequate warning; for conspiring to deprive them of their civil rights; for assault; and for false arrest while Plaintiffs were documenting the public protests following the not guilty verdict in the 1st Degree murder trial of Jason Stockley (the "*Stockley* Verdict").

This claim arises from Plaintiffs' efforts, as journalists, to document, report on and record ongoing protests relating to the *Stockley* Verdict. Defendants, intentionally and willfully, subjected Plaintiffs to violations of freedom of the press and free speech, by targeting Plaintiffs specifically, in an effort to halt and/or impede the documentation of the abuses by police during the *Stockley* Verdict protests.

## PARTIES

1.      Plaintiff Drew Burbridge is a Missouri resident who lives in Republic, Missouri.

2.      Plaintiff Jennifer Burbridge is a Missouri resident who lives in Republic, Missouri.

3.      Plaintiffs Drew and Jennifer Burbridge are a married couple.

4.      Plaintiffs Drew and Jennifer Burbridge are documentary filmmakers who focus on documenting the civil rights of various world populations. The Burbridges were present in St.

Louis, Missouri on Sunday, September 17, 2017, to document the public response to the *Stockley* Verdict and the police response to those protests.

5.     The Burbridges were not participating as protestors, but rather as neutral third-party observers and journalists.

6.     Defendant the City of St. Louis, Missouri (hereinafter, "City of St. Louis") is a first class city, and a political subdivision of the State of Missouri duly organized under the Constitution of Missouri.

7.     The St. Louis Metropolitan Police Department ("SLMPD") is an instrumentality of the City of St. Louis, Missouri organized and controlled pursuant to the Statutes of the State of Missouri.

8.     Defendant Police Officer Marcus Biggins is a police officer with the St. Louis Metropolitan Police Department. On information and belief P.O. Biggins is further identified by Department Serial Number 11375.

9.     Defendant Sergeant Brian Rossomanno is a police officer with the St. Louis Metropolitan Police Department. On information and belief Sgt. Rossomanno is further identified by Department Serial Number 5336.

10.     Defendant Sergeant Rossomanno has self-identified using the moniker "#riotking".

11.     Defendant John Doe #3 is a police officer with the St. Louis Metropolitan Police Department. This individual remains anonymous because despite numerous requests the City and his fellow officers have refused or failed to identify this officer.

12.     Defendant John Doe #4 is a police officer with the St. Louis Metropolitan Police Department who physically man-handled Jennifer Burbridge during her arrest and zip-tied her.

3

13.     At all times relevant herein, Defendants acted under color of the laws, statutes, ordinances and regulations of state law.

14.     At all times relevant herein, except as explicitly stated, Defendants acted under the management, regulations, policies, customs, practices and usages of the SLMPD and/or the City of St. Louis pursuant to their authority as law enforcement officers.

## JURISDICTION AND VENUE

13.     Plaintiffs bring this claim pursuant to 42 U.S.C. § 1983, the First, Fourth and Fourteenth Amendments to the United States Constitution.

14.     The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 because Plaintiffs' action arises under the Constitution of the United States and § 1343(a)(3) providing to redress for the deprivation of rights secured by the Constitution of the United States.

15.     Venue is proper in the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b)(2) because all of the events giving rise to the claims occurred in the City of St. Louis.

16.     Venue is proper in the Eastern Division because all of Defendants' actions and the events leading to the claims for relief occurred in the City of St. Louis which is in the Eastern Division. E.D. Mo. L.R. 2.07(A)(1), (B)(1).

17.     This Court has supplemental jurisdiction over the included Missouri state law claims pursuant to 28 U.S.C. §1367.

18.     Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## ALLEGATIONS COMMON TO ALL COUNTS

19.     In December 2011, then-St. Louis police officer Jason Stockley (who is white) shot and killed St. Louis resident Anthony Lamar Smith (who was African-American), whom Stockley and his partner had initially stopped on suspicion of involvement in a drug transaction.

20.     In May 2016, Officer Stockley was charged with first-degree murder for Smith's death.

21.     On Friday, September 15, 2017, after a four-day bench trial, a Missouri Circuit Judge acquitted Officer Stockley of first-degree murder.

22.     Following the announcement of the *Stockley* Verdict, public protests began at multiple locations in St. Louis and surrounding communities, some spontaneous and others more organized.

23.     St. Louis Metropolitan police officers amassed at several protests wearing tactical dress, including helmets, and carrying batons, full-body riot shields, and chemicals, such as tear gas, skunk, inert smoke, pepper gas, pepper pellets, xylyl bromide, and/or similar substances (collectively, "chemical agents").

24.     On multiple occasions, SLMPD police officers, without sufficient or adequate warning, deployed chemical agents against protestors, as well as bystanders, members of the press, and patrons of nearby businesses, including but not limited to the following occasions:

   a.   Friday afternoon near the intersection of Clark and Tucker Avenues

   b.   Friday evening near the intersection of McPherson and Euclid Avenues

   c.   Friday evening near the intersection of Waterman and Kingshighway Boulevards

   d.   Friday evening near the intersection of Euclid and Maryland Avenues**;**

   e.   Friday evening near the intersection of Lindell and Kingshighway Boulevards

      f.   Friday evening near the intersection of Euclid Avenue and Pershing Place

      g.   Sunday evening near the intersection of Tucker Boulevard and Washington

Avenue.

      25.     On Sunday night, September 17, 2017, the Burbridges were present at the

intersection of Tucker Boulevard and Washington Avenue to observe and film the

demonstrations and police response thereto.

      26.     The Burbridges arrived in the area of Tucker Boulevard and Washington Ave.

around 11:05 p.m.

      27.     The Burbridges were not present as protestors nor were they participating in the

protests – they were neutral third-party observers.

      28.     The Burbridges had professional-grade photographic equipment and were

photographing and recording protestors and police.

      29.     While there was a large police presence at the time of their arrival, they were

neither prevented from entering the area, nor discouraged from entering the area in any way.

Police officers were permitting protestors, as well as other pedestrians not participating in or

observing the protest, to enter and exit the area at will during the interim, including allowing

people to move into intersection of Tucker and Washington.

      30.     Further, Plaintiffs observed multiple police officers stationed around Tucker and

Washington filming the assembled crowd.

      31.     Drew Burbridge observed police specifically filming him on multiple occasions.

      32.     Shortly after Plaintiffs arrival, at approximately 11:20 p.m., SLMPD police

officers began banging batons on their riot shields and encircled the assembly. The assembled

protestors, bystanders and media were encircled and denied a means of egress. This is a law

enforcement tactic referred to as "kettling."

33.     At no time prior to the police actions described immediately above did the Burbridges hear instructions to disperse or leave the assembly.

34.     Without further instruction or warning, police officers surrounded protestors, observers, members of the press, and the media, cutting off all routes of egress—including via any sidewalk—and prohibiting the people trapped inside from leaving.

35.     When this occurred, Drew Burbridge asked an officer (identify unknown) if he and his wife could exit the kettle area, and informed the officer that they were not protestors and were part of the media.

36.     Drew Burbridge's peaceful and lawful request to leave the kettle area was denied.

37.     Police officers, who were wearing protective equipment, then without warning heard by the Burbridges or numerous others deployed chemical agents at the individuals caught in the kettle.

38.     Both Drew and Jennifer Burbridge were sprayed with police deployed chemical agents.

39.     It was clear, by the coordination of the actions of the officers in surrounding the assembly into a group, "the kettle", and the systematic disbursement of the chemical agents, this tactic was planned and that senior officials of the SLMPD had notice of and sanctioned the conduct of the Defendants as described herein.

40.     Upon information and belief, senior officials of the SLMPD were directing such actions and conduct and/or tacitly accepting and encouraging such conduct by not preventing officers from engaging in such conduct and by not disciplining them when they did engage in such actions and conduct.

■ **Drew Burbridge**

41.    After the initial deployment of chemical agents by the police, Drew Burbridge, who was sitting cross legged on the ground with his arms around his wife, was approached by two St. Louis Metropolitan Police Department officers.

42.    One of the officers stated "that's him" and grabbed Drew Burbridge by each arm and roughly drug him away from his wife.

43.    Drew Burbridge immediately identified himself to the Defendants as a journalist and specifically stated that he was not a protestor and was not resisting arrest

44.    Police officers then threw Drew Burbridge to the pavement, face first, and twisted his arms behind his back, and repeatedly dropped knees into Drew Burbridge's back, neck, arms and legs.

45.    While assaulting Drew Burbridge, one of the police officers stated: "Do you want to take my picture now motherfucker? Do you want me to pose for you?"

46.    After Drew Burbridge was restrained on the ground laying prostate and compliant over a street curb, Defendant Rossomanno walked up to Drew Burbridge, who was under control and in custody, and purposely deployed chemical spray into his mouth and eyes two separate times.

47.    At the time Plaintiff Drew Burbridge was sprayed with chemical munitions he was not resisting, was submissive and compliant, and was willing and ready to comply with any order given by the Defendants.

48.    After he was sprayed with chemical munitions, police officers, including P.O. Marcus Biggins and John Doe #3, proceeded to continue striking him on the ankles, legs, body, head, and neck with their knees, feet and hands.

49.     John Doe #3 can be seen in videos repeatedly and unnecessarily kneeing a prone, prostrate, and restrained Drew Burbridge.

50.     At no point during the illegal assault was Drew Burbridge resisting or in any other way failing to comply with the officers.

51.     Defendants continued to physically assault Drew Burbridge until he lost consciousness from the sustained beating.

52.     Despite repeated requests by Drew Burbridge, none of the law enforcement officers would identify themselves.

53.     After the assault, Defendant P.O. Biggins brought Drew Burbridge to his feet and delivered him to the custody of a uniformed SLMPD officer for processing, who subsequently transferred him to another uniformed SLMPD officer for placement in a van for transport to jail.

54.     Although he had been pepper-sprayed and beaten and could not see, the SLMPD officers did not allow or assist Drew Burbridge in rinsing the chemical agent from his eyes and would laugh as he stumbled and ran into objects as he tried to make his way into the van and jail.

55.     Drew Burbridge was jailed for nearly 20-hours.

56.     Drew Burbridge was released with a municipal charge of "failure to disperse."

57.     The City never followed through with a prosecution for "failure to disperse".

58.     At no time was Drew Burbridge charged with "resisting arrest".

■ **Jennifer Burbridge**

59.     Jennifer Burbridge was among those who were initially indirectly subjected to chemical spray by the police.

60.     Jennifer Burbridge was forced to watch her husband and film partner Drew Burbridge being drug away by Defendants P.O. Marcus Biggins and John Does #2 and #3.

61.     She was physically prevented from following or assisting her husband.

62.     She observed the law enforcement assault and beating of her husband.

63.     Plaintiff Jennifer Burbridge was roughly handled by police and zip-tied against her will by John Doe #4.

64.     At one point, while two officers were carrying Jennifer Burbridge away, one of the officers passed another male officer and stated, "Look who I have."  Such statements illustrated a clear intent on the part of the officers to target members of the media, like the Burbridges, who were attempting to documents the protests and the SLMPD police response.

65.     Another SLMPD officer made a point to walk up to Jennifer Burbridge after she had observed her husband pepper sprayed and assaulted and exclaim, "Did you like that? Come back tomorrow and we can do this again." Another SLMPD officer stated, "What did you think was going to happen?"

66.     Like her husband, Jennifer Burbridge was taken into custody of the St. Louis Metropolitan Police Department who placed her in a van for transport to jail.

67.     On the way to the jail, a detainee in the van requested the name of the transporting officers, one of who responded, "I'm Father Time."

68.     Jennifer Burbridge was jailed for nearly 20-hours.

69.     Jennifer Burbridge was required to submit to a jail administered pregnancy test as a condition of being released.

70.     Jennifer Burbridge was released with a municipal charge of "failure to disperse."

71.     The City never followed through with a prosecution for "failure to disperse".

■  **S.L.M.P.D.**

72.     Police officers intentionally exposed Plaintiffs to chemical agents without notice or the opportunity to disperse.

73.     Police officers intentionally assaulted Plaintiff Drew Burbridge with both chemical agents as well as a targeted physical assault.

74.     Police officers either intentionally or negligently inflicted emotional distress upon Jennifer Burbridge by assaulting her husband in front of her.

75.     Defendants then failed to fully and accurately report their actions pursuant to Department policy.

76.     Defendants Biggins and Rossomanno have concealed the identities of other individual officers involved in the assault and arrest of Drew Burbridge.

77.     While acting within the scope of their employment in deploying the chemical agents and detaining Drew Burbridge, the named officers acted outside the scope of their employment or for personal reasons in further physically assaulting the Plaintiffs.

## MUNICIPAL LAW ALLEGATIONS

78.     Police officers are authorized by St. Louis Code of Ords. 15.52.010 and 17.16.275 to declare protests "unlawful assemblies" and to order protestors "to disperse."

79.     On some occasions, the protests did not meet the ordinance definition of an unlawful assembly.

80.     Dispersal orders, even when given, were too remote in time and distance for a person of ordinary intelligence, including Plaintiffs, to understand where and when they applied.

81.     In fact, at the time Plaintiffs were allowed to enter the area, no "order to disperse" was ever heard by the Plaintiffs.  Upon information and belief, the Plaintiffs were allowed to

enter the area more than 30 minutes after the "dispersal" order was given, with no warning to the Plaintiffs that they were allegedly entering an unlawful assembly.

82.     Throughout the weekend, on multiple occasions, police officers commanded protestors and observers to cease recording video and photographs and on some occasions deleted, or commanded to be deleted, video and photographs already recorded.

83.     The City of St. Louis has a custom or policy of deploying chemical agents against protestors without warning and has done so on occasions before these particular protests, including in November 2014 near the intersection of Arsenal Street and Grand Avenue and in August 2015 near the intersection of Walton Avenue and Page Boulevard.

84.     The City of St. Louis has a custom or policy of commanding protestors to disperse without providing sufficient routes of egress and without instructions about where, how quickly, and how far away individuals must go to comply with that order, and has done so on occasions before these particular protests, including in 2014 near the intersection of Arsenal Street and Grand Avenue and in 2015 near the intersection of Walton Avenue and Page Boulevard.

85.     The City of St. Louis has a custom or policy of enforcing Ord. 15.52.010, defining an unlawful assembly, in an unconstitutional way, and has done so on occasions before these particular protests, including in 2014 near the intersection of Arsenal Street and Grand Avenue and in 2015 near the intersection of Walton Avenue and Page Boulevard.

86.     The City of St. Louis has a custom or policy of enforcing Ord. 17.16.275, describing the offense of failure to disperse, in an unconstitutional way, and has done so on occasions before these particular protests, including in 2014 near the intersection of Arsenal Street and Grand Avenue and in 2015 near the intersection of Walton Avenue and Page Boulevard.

87.     Both ordinances are unconstitutionally vague on their face and as applied to Plaintiffs and do not provide fair notice to a reasonable person as to how to comply with the law.

88.     The City of St. Louis has a custom or policy of retaliating against protestors expressing disapproval of the actions of law enforcement officers, and has done so on occasions before these particular protests, including in 2014 near the intersection of Arsenal Street and Grand Avenue and in 2015 near the intersection of Walton Avenue and Page Boulevard.

89.     The City of St. Louis has failed to supervise and train its officers to deploy chemical agents in a constitutional way, to enforce St. Louis Code of Ords. 15.52.010 and 17.16.275 in a constitutional way, to permit recording of police actions, and to avoid restricting freedom of movement unjustifiably, and has been on notice that the lack of training and supervision have resulted in the deprivation of constitutional rights since at least 2014.

90.     Upon information and belief, the City of St. Louis, enacted and follows a policy and custom of refusing to negotiate, drop or dismiss any charges related to "failure to disperse," no matter how illegal or unwarranted the arrest or charge, without a citizen first waiving their civil rights and signing a full release and waiver.

## COUNT I: VIOLATION OF PLAINTIFFS FIRST AMENDMENT RIGHTS OF FREEDOM OF SPEECH AND FREEDOM OF PRESS (42 U.S.C. §1983)

Count I is directed against all Defendants. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

91.     Plaintiffs were not protestors.

92.     Plaintiffs were journalists and neutral third-party observers who were engaged in constitutionally protected activity when they attended a lawful assembly on public streets and sidewalks for the purpose of documenting a public protest.

93.     Defendants violated Plaintiffs rights under the First Amendment to freedom of assembly, and to freedom of press and freedom of speech by interfering with Plaintiffs' ability to gather information and cover a matter of public interest and concern as members of the media documenting the protests of the *Stockley* Verdict.

94.     Observing and recording public protests, and the police response to those protests, is a legitimate means of gathering information for public dissemination that is protected by the freedom of speech and freedom of the press clauses of the First Amendment, as applied to the states under the Fourteenth Amendment to the United States Constitution.

95.     Defendants engaged in these unlawful actions willfully and knowingly, acting with reckless or deliberated indifference to the Plaintiff's First Amendment rights.

96.     As a direct and proximate result of Defendants' unlawful action, Plaintiffs were damages.

WHEREFORE, Plaintiffs respectfully request this Court:

a.     Enter judgment in favor of Plaintiffs and against the Defendants;

b.     Award Plaintiffs monetary damages in an amount that is fair and reasonable to compensate them for the damages they have suffered;

c.     Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

d.     Allow such other and further relief as the Court deems just and proper.

## COUNT II: FIRST AMENDMENT RETALIATION (42 U.S.C. §1983)

Count II is directed against all Defendants. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs of this complaint as fully set forth herein.

97.     Plaintiffs were journalists and neutral third-party observers who were engaged in constitutionally protected activity when they were documenting the public protests relating to the *Stockley* Verdict and the police response thereto.

98.     The City of St. Louis retaliated against Plaintiffs for engaging in constitutionally protected activities of freedom of speech and freedom of the press.

99.     Plaintiffs now reasonably fear deployment of chemical agents without warning, unlawful seizure and excessive force through "kettling", interference with their right to record the police, and enforcement of St. Louis Code of Ords. 15.52.010 and 17.16.275 in an arbitrary and/or retaliatory manner if they observe a protest in the City of St. Louis.

100.    These acts that would chill a person of ordinary firmness from continuing to engage in a constitutionally protected activity, and they have, in fact, chilled Plaintiffs from continuing to peacefully observe and document these protests.

101.    Defendants' arrest and excessive use of force against Plaintiffs was because they exercised their First Amendment rights.

102.    It was the custom or policy of the City of St. Louis, as well as the City's failure to train and supervise its officers and/or the City's explicit or implied direction to Defendants, that caused the First Amendment retaliation.

103.    As a result of the Defendants retaliation the Plaintiffs were damaged.

WHEREFORE, Plaintiffs respectfully request this Court:

a.  Enter judgment in favor of Plaintiffs and against Defendants;

b.  Award Plaintiffs monetary damages in an amount that is fair and reasonable to compensate them for the damages they have suffered;

c.      Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

d.      Allow such other and further relief as the Court deems just and proper.

## COUNT III: FOURTH AMENDMENT VIOLATION FOR UNLAWFUL SEARCH AND SEIZURE AND USE OF EXCESSIVE FORCE (42 U.S.C. §1983)

Count III is directed against all Defendants. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

104.    Plaintiffs have a right under the Fourth Amendment to be free from unreasonable searches and seizures and the use of excessive force.

105.    Plaintiffs were assaulted, and their property and persons searched and then seized by Defendants when they intentionally, and by use of chemical agents and/or "kettling", terminated their freedom of movement, and zip-tied their hands behind their backs.

106.    The use of chemical agents without warning and the employment of "kettling" without warning was objectively unreasonable and constituted an unlawful seizure and excessive force.

107.    Plaintiff Drew Burbridge, while not resisting, acting peacefully at all times, attempting to leave the area, and attempting to comply with officers, was assaulted and beaten and repeatedly pepper sprayed in such a way to cause physical pain and suffering and not for any other lawful purpose.

108.    Plaintiff Jennifer Burbridge, while not resisting, acting peacefully at all times, attempting to leave the area, and attempting to comply with officers, was drug away, zip-tied and arrested and subjected to chemical agents.

109.    Plaintiffs had committed no crime.

110.    Plaintiffs posed no threat to the safety of any police officer or any other person.

111.    Defendants' use of force was unnecessary and punitive and appeared to specifically target Plaintiffs due to their efforts to document the protests and the police response as members of the press.

112.    Plaintiffs had a Constitutional right to be free from the excessive use of force.

113.    Plaintiffs had a Constitutional right to be free from the false allegation and charge of "failure to disperse."

114.    It was the custom or policy of the City of St. Louis, as well as the City's failure to train and supervise its officers, that caused the unlawful seizures and use of excessive force.

WHEREFORE, Plaintiffs respectfully request this Court:

a.   Enter judgment in favor of Plaintiffs and against the City of St. Louis;

b.   Award Plaintiffs monetary damages in an amount that is fair and reasonable to compensate them for the damages they have suffered;

c.   Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

d.   Allow such other and further relief as the Court deems just and proper.

## COUNT IV:  FOURTEENTH AMENDMENT – PROCEDURAL DUE PROCESS (42 U.S.C. §1983)

Count IV is directed against all Defendants. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

109.    The due process rights of Plaintiffs were violated when the City of St. Louis, through its agent officers, failed to provide sufficient warning about the deployment of chemical

agents, failed to provide an opportunity to disperse, failed to leave open routes of egress, and failed to enforce St. Louis Code of Ords. 15.52.010 and 17.16.275 in a way that a person of ordinary intelligence could understand and comply with.

110.    St. Louis Code of Ords. 15.52.010 and 17.16.275, and the City of St. Louis' policies and customs related to their enforcement, permit arbitrary enforcement at the unbridled discretion of an individual police officer(s), without adequate notice or an adequate opportunity to comply, in a way that does not provide a person of ordinary intelligence with a reasonable opportunity to understand what conduct is permitted and prohibited, and in a way that authorizes and encourages discrimination based on the content of the message of a person engaged in expressive activity.

111.    Moreover, the City of St. Louis has enacted and follow a custom or procedure of refusing to negotiate or dismiss any charges under these ordinances without a release of liability, which encourages its officers to act with impunity and in violation of the civil rights of their citizens.

WHEREFORE, Plaintiffs respectfully requests this Court:

a.      Enter judgment in favor of Plaintiffs and against the City of St. Louis;

b.      Award Plaintiffs monetary damages in an amount that is fair and reasonable to compensate them for the damages they have suffered;

c.      Declare the ordinances unconstitutional;

d.      Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

e.      Allow such other and further relief as the Court deems just and proper.

## COUNT V: ASSAULT & BATTERY
### DREW BURBRIDGE'S CLAIM FOR ASSAULT AND BATTERY UNDER MISSOURI STATE LAW AGAINST DEFENDANTS P.O. MARCUS BIGGINS, SGT. BRIAN ROSSOMANNO, AND JOHN DOE #3

Count V is directed against Defendants P.O. Marcus Biggins, Sgt. Brian Rossomanno, and John Doe 3. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

112.    Defendants physically assaulted Plaintiff Drew Burbridge, without justification or provocation, by spraying chemicals on him, by zip-cuffing him, grabbing him from behind, slamming him into the ground, and striking him in the foot, ankle, knee, arms, body, neck and head.

113.    As a result of this unlawful assault and battery, Drew Burbridge was injured.

114.    As a direct and proximate result of the assault on Drew Burbridge by the Defendant, Plaintiff suffered physical injuries and pain and suffering, and caused him to incur medical bills. The unlawful actions of the Defendants also caused him pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment, stress and loss of reputation, and inability to return to work

115.    The conduct of the Defendants was reckless and callously indifferent to the rights of Plaintiff, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish the Defendants in their individual capacity and to deter them, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Drew Burbridge prays for judgment against Defendants seeking money damages against him for compensatory damages in an amount that is fair and reasonable for his physical injuries and pain and suffering and for emotional pain and suffering; for punitive damages against the Defendants in their individual capacities; for the costs of this action, to

include but not necessarily be limited to reasonable attorney's fees; and for such other and

further relief as the Court deems fair and appropriate under the circumstances.

## COUNT VI: ASSAULT & BATTERY
## JENNIFER BURBRIDGE'S CLAIM FOR ASSAULT AND BATTERY UNDER
## MISSOURI STATE LAW AGAINST DEFENDANT JOHN DOE #4

Count VI is directed against Defendant Sgt. Brian Rossomanno and John Doe #4 and

police department. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs

of this Complaint as fully set forth herein.

116.    Defendant Sgt. Brian Rossomanno physically assaulted Plaintiff by spraying

chemicals on her.

117.    Defendant John Doe #4 physically assaulted Plaintiff Jennifer Burbridge, without

justification or provocation by zip-cuffing her and grabbing her.

118.    As a result of this unlawful assault and battery, Jennifer Burbridge was injured.

119.    As a direct and proximate result of the assault on Jennifer Burbridge by the

Defendants, Plaintiff suffered physical injuries and pain and suffering, and caused her to incur

medical bills. The unlawful actions of the Defendants also caused her pain of the mind, including

but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of

enjoyment, stress and loss of reputation, and inability to return to work

120.    The conduct of the Defendants was reckless and callously indifferent to the rights

of Plaintiff, malicious and wanton with respect to those rights, and an award of punitive damages

is warranted and necessary to punish the Defendants in their individual capacity and to deter

them, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Jennifer Burbridge prays for judgment against Defendants

seeking money damages against her for compensatory damages in an amount that is fair and

reasonable for her physical injuries and pain and suffering and for emotional pain and suffering; for punitive damages against the Defendants in their individual capacities; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT VII: FALSE IMPRISONMENT
## DREW BURBRIDGE'S CLAIM UNDER MISSOURI STATE LAW

Count VII is directed against Defendants P.O. Marcus Biggins, Sgt. Rossomanno, and John Doe #3. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

121.    Plaintiff Drew Burbridge was arrested against his will by St. Louis Metropolitan Police.

122.    Plaintiff Drew Burbridge was detained by St. Louis Metropolitan Police without legal justification.

123.    As a result of this unlawful assault and battery and false imprisonment, Drew Burbridge was injured.

124.    As a direct and proximate result of the assault on Drew Burbridge by the Defendant, Plaintiff suffered physical injuries and pain and suffering, and caused him to incur medical bills. The unlawful actions of the Defendants also caused him pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment, stress and loss of reputation.

125.    The conduct of the Defendants was reckless and callously indifferent to the rights of Plaintiff, malicious and wanton with respect to those rights, and an award of punitive damages

is warranted and necessary to punish the Defendants in their individual capacity and to deter them, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Drew Burbridge prays for judgment against Defendants seeking money damages against him for compensatory damages in an amount that is fair and reasonable for his physical injuries and pain and suffering and for emotional pain and suffering; for punitive damages against the Defendants in their individual capacities; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT VIII: FALSE IMPRISONMENT
## JENNIFER BURBRIDGE'S CLAIM UNDER MISSOURI STATE LAW

Count VIII is directed against Defendant John Doe #4. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

126.    Plaintiff Jennifer Burbridge was arrested against her will by St. Louis Metropolitan Police Officer John Doe #4.

127.    Plaintiff Jennifer Burbridge was detained by St. Louis Metropolitan Police Officer John Doe #4 without legal justification.

128.    As a result of this unlawful assault and battery and false imprisonment, Jennifer Burbridge was injured.

129.    As a direct and proximate result of the assault on Jennifer Burbridge by the Defendant, Plaintiff suffered physical injuries and pain and suffering, and caused her to incur medical bills. The unlawful actions of the Defendants also caused her pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment, stress and loss of reputation.

130.     The conduct of the Defendants was reckless and callously indifferent to the rights of Plaintiff, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish the Defendants in their individual capacity and to deter them, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Jennifer Burbridge prays for judgment against Defendants seeking money damages against her for compensatory damages in an amount that is fair and reasonable for her physical injuries and pain and suffering and for emotional pain and suffering; for punitive damages against the Defendants in their individual capacities; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT IX: FAILURE TO INSTRUCT, TRAIN, SUPERVISE, CONTROL, AND/OR DISCIPLINE AGAINST THE CITY OF ST. LOUIS AND ST. LOUIS METROPOLITAN POLICE DEPARTMENT COGNIZABLE UNDER 42 U.S.C. § 1983

Count IX is directed against The City of St. Louis. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

131.     Defendants violated the constitutional rights of Drew and Jennifer Burbridge as set forth herein.

132.     There exists within the Police Department and/or the City policies or customs, practices and usages that are so pervasive that they constitute the policies of this Defendant, that caused the constitutional deprivations of Drew and Jennifer Burbridge as set forth herein. The policies, customs, practices, and usages that exist are:

> A. To arrest those in and around lawful assemblies without reasonable cause or provocation and in violation of their constitutional rights;

B.   To ignore the policies and procedures of SLMPD and/or the Police Department, by encouraging and/or permitting the false arrests of attendees at lawful assemblies;

C.   To engage in a course of conduct designed to cover-up and insulate City officials from sanction, civil and criminal, and or by the Department or City when targeting African-American citizens; and

D.   To fail to adequately train, supervise, and/or discipline police officers and/or City officials concerning the practices afore-described to assure compliance with City and/or Department policy, state and federal laws, and the Constitution of the United States.

133.   Alternatively and without waiver of the foregoing, the City's training and program was not adequate to train its officers and officials to properly handle reoccurring situations like the one involving Drew and Jennifer Burbridge, and therefore, the City had a policy or custom of failing to adequately train employees/officials of the City and/or Department.

134.   The City and/or the Department knew that more and/or different training was needed to avoid the false arrests of those who are in and around lawful assemblies and other constitutional deprivations of the Plaintiffs.

135.   The Department was on notice that certain of the named Defendants have had numerous civil rights violation and excessive force complaints lodged against them.

136.   The City is ultimately vested with the duty, power and authority to train, supervise, discipline and otherwise control the officers of the Police Department. The City failed in its duty to so train, supervise and discipline Defendants in general and specifically so as to conform their conduct with constitutional requirements. Specifically, the City failed to

24

adequately train, supervise and discipline officers of the Police Department/agents of the City in the proper and lawful arrests of subjects; failed to train, supervise and discipline officers with regard to the duty to intervene and/or report transgressions, and to truthfully respond to inquiries. The city effectively abrogated the power to train, supervise, discipline and control officers of the Police Department/agents of the City, resulting in the constitutional deprivations to Drew and Jennifer Burbridge as set forth above.

137.    The acts of the Defendants as set forth herein were taken under color of state law.

138.    As a direct and proximate result of the actions of this Defendant as set forth herein, Drew and Jennifer Burbridge have been damaged as a result of being responsible for medical bills, physical injury, by pain and suffering, emotional damages, pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

WHEREFORE, Plaintiffs Drew and Jennifer Burbridge prays for judgment against the Defendants seeking money damages against them for compensatory damages in an amount that is fair and reasonable for her emotional pain and suffering; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT X: MALICIOUS FALSE PROSECUTION (STATE LAW)

Count X is directed against Defendants P.O. Marcus Biggins, Sgt. Brian Rossamanno, and John Does# 3 and #4. Plaintiffs incorporate by reference each and every allegation and averment set forth in the preceding paragraphs in this Complaint as though fully set forth herein.

139.    In detaining and arresting the Plaintiffs, the defendants made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process.

140.     The Defendants had an improper purpose in exercising such illegal, perverted, or improper use of process – namely to conceal their illegal and unconstitutional assault and detention on Plaintiffs Drew and Jennifer Burbridge.

141.     As a direct and proximate result of the actions of the Defendants, Plaintiffs sustained damages as set forth above.

142.     The conduct of the Defendants was reckless and callously indifferent to the rights of Plaintiffs, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish the Defendants in their individual capacity and to deter them, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiffs Drew and Jennifer Burbridge pray for judgment against Defendants seeking money damages against them for compensatory damages in an amount that is fair and reasonable for their physical injuries and pain and suffering and for emotional pain and suffering; for punitive damages against the Defendants in their individual capacities; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT XI: CONSPIRACY TO DEPRIVE CIVIL RIGHTS (42 U.S.C.§1983)

Count XI is directed against individual Defendants Biggins and Rossomanno. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

143.     Defendants Biggins and Rossomanno participated in the assault and arrest of Plaintiff Drew Burbridge.

144.     Both Defendants Biggins and Rossomanno were was acting under color of state law.

26

145.    Defendants Biggins and Rossomanno acted in concert to deny Plaintiff Drew Brubridge his constitutionally protected right to assemble, to free speech, and to the press.

146.    Defendants Biggins and Rossomanno acted in concert to deprive Plaintiff Drew Burbridge of his constitutionally protected right to be free from excessive force.

147.    Despite going "hands-on" with the Plaintiff, and despite the use of chemical munitions, neither Biggins nor Rossomanno admitted their own actions in a police report or supplemental report, nor did they report their fellow officers' use of force.

148.    Post-arrest neither Biggins nor Rossomanno complied with SLMPD Department Policy regarding reporting.

149.    While investigation has identified P.O. Biggins and Sgt. Rossomano, video of the assault shows additional officers participated in assaulting Plaintiff Drew Burbridge.

150.    On information and belief, Defendants Biggins and Rossomanno have been interviewed by the City and its police department regarding the identities of the as-of-yet unnamed officers who participated in the assault on Drew Brubridge.

151.    On information neither Biggins nor Rossommanno have disclosed the identities of the other officers who participated in the assault and arrest of Drew Burbridge.

152.    On information and belief, neither Biggins nor Rossomanno have voluntarily disclosed their use of force.

153.    Plaintiff has made repeated inquiries of the City requesting the officers in the video (produced by the City), including but not limited to:

    a.    Emails between counsel on April 25, 2018, May 14, 2018;

    b.    Numerous phone calls with attorneys for the City; and

    c.    Formal discovery in this litigation.

27

154.    To date the City, its police department, and these individual officers have refused to identify the officer who participated in the assault on Drew Brubrdige.

155.    Defendants acted in concert to assault and arrest the Plaintiff and directed themselves toward an unconstitutional action by virtue of a mutual understanding between themselves and others.

156.    Defendants are acting in concert to conceal the identities of the other police officers who assisted in the assault on Drew Burbridge.

157.    The actions of Biggins and Rossomanno both during the assault and arrest, and since that time through the cover-up, have deprived plaintiffs of their Constitutional rights.

158.    The actions of Biggins and Rossomanno to conceal the identities of the other participants of the assault are denying Plaintiff his Constitutional right to access the Courts and seek justice.

159.    Defendant Biggins and Rossomanno have engaged in over acts in furtherance of this conspiracy, including, but not limited to:

      a.    Failing to file accurate and truthful reports;

      b.    Failing to comply with Department policies and rules regarding (i) reporting; (ii) use of force;

      c.    Refusing to identify additional co-conspirators and others who assaulted Drew Burbridge.

160.    As a direct and proximate result of the Defendants actions on the night of September 17, 2017, Plaintiff was physically and legally injured as detailed elsewhere in this Complaint.

161.    As a direct and proximate result of the Defendant's actions since the assault, Plaintiff has been denied the ability to fairly and fully litigate his claim for damages as

Defendants have obfuscated the record, hidden information, and refused to identify persons whom they know to be involved in the assault and arrest.

162.    Plaintiff has been damaged as a directly and proximate result of the actions of Biggins and Rossomanno as described herein.

WHEREFORE, Plaintiffs respectfully request this Court:

e.   Enter judgment in favor of Plaintiffs and against the Defendants;

f.   Award Plaintiffs monetary damages in an amount that is fair and reasonable to compensate them for the damages they have suffered;

g.   Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

h.   Allow such other and further relief as the Court deems just and proper.

Respectfully submitted,

**NEWTON BARTH L.L.P.**

By:   /s/ ***Talmage E. Newton IV***
Talmage E. Newton IV, MO56647
tnewton@newtonbarth.com
Brandy B. Barth, MO56668
bbarth@newtonbarth.com
555 Washington Ave., Ste. 420
St. Louis, Missouri 63101
(314) 272-4490 – Telephone
(314) 762-6710 – Facsimile

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was served via the Court's electronic filing system upon all parties of record on this 14th day of December, 2018.

/s/ ***T.E. Newton***